**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**

| | |
|---|---|
| T.H., individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br>v.<br><br>FINASTRA TECHNOLOGY, INC.,<br><br>and<br><br>BANK OF AMERICA CORPORATION,<br><br>and<br><br>JP MORGAN CHASE BANK, N.A.,<br><br>Defendants. | **Case No.**<br><br>**CLASS ACTION COMPLAINT**<br><br>JURY TRIAL DEMANDED |

**COMPLAINT**

Plaintiff T.H. ("Plaintiff"), individually and on behalf of all others similarly situated, and on behalf of the general public, brings this Class Action Complaint, against defendants Finastra Technology, Inc. ("Finastra") and Bank of America Corporation ("BoA") and JP Morgan Chase Bank, N.A. ("Chase")(collectively referred to as "Defendants") based on personal knowledge and the investigation of counsel, and alleges as follows:

## I. INTRODUCTION

1. Plaintiff and the proposed Class Members bring this class action lawsuit on behalf of all persons who entrusted Defendants with sensitive Personally Identifiable Information ("PII[1]" or "Private Information") that was impacted in a data breach Defendant disclosed in June

[1] Personally identifiable information generally incorporates information that can be used to distinguish or trace an individual's identity, either alone or when combined with other personal or identifying information. 2 C.F.R. § 200.79. At a minimum, it includes all information that on its face expressly identifies an individual.

2025 (the "Data Breach" or the "Breach").

2. Defendant Finastra Technology, Inc., is a financial software company that provides solutions to banks, lenders, and other financial institutions (i.e. Defendants Bank of America Corporation and JP Morgan Chase Bank, N.A.). They offer a broad range of software and services for retail banking, lending, payments, treasury and capital markets, and universal banking.

3. Defendant Bank of America Corporation is a financial institution that provides banking, lending and other financial services to business entities as well as individual citizens within the United States. Bank of America Corporation is a customer of Defendant Finastra Technology, Inc., and employed Defendant Finastra Technology, Inc. to provide software services to the company.

4. Defendant JP Morgan Chase Bank, N.A. is a financial institution that provides banking, lending and other financial services to business entities as well as individual citizens within the United States. JP Morgan Chase Bank, N.A. is a customer of Defendant Finastra Technology, Inc., and employed Defendant Finastra Technology, Inc. to provide software services to the company.

5. As part of its business operations to individuals, and in order to gain profits, Defendant BoA collected, maintained and stored the Private Information of Plaintiff and the Class Members and provided it to Defendant Finastra.

6. As part of its business operations to individuals, and in order to gain profits, Defendant Chase collected, maintained and stored the Private Information of Plaintiff and the Class Members and provided it to Defendant Finastra.

7. As part of its business, and in order to gain profits, Defendant Finastra obtained and stored the Private Information of Plaintiff and Class Members, it received from the various banks and financial institutions, including without limitation Defendants BoA and Chase.

8. By taking possession and control of Plaintiff and Class Members' Private Information, Defendants assumed a duty to securely store and protect it.

9. Defendants breached this duty and betrayed the trust of Plaintiff and Class Members

by failing to properly safeguard and protect their Private Information, thus enabling cybercriminals to access, acquire, appropriate, compromise, disclose, encumber, exfiltrate, release, steal, misuse, and/or view it.

10. On November 7, 2024, Defendant Finastra, identified a cybersecurity incident that impacted certain internal systems.[2] Once the incident was discovered, Defendant launched an investigation, to determine the nature and scope of the Data Breach.[3]

11. Defendant's investigation revealed that an unauthorized third-party accessed a Secure File Transfer Platform ("SFTP") at various times between October 31, 2024, and November 8, 2024.[4] Defendant Finastra Technology, Inc., uses this SFTP to provide technical and customer support to its customers related to certain products.[5]

12. Defendant Finastra's investigation indicates that on October 31, 2024, the unauthorized third-party obtained certain files from the SFTP.[6] Upon information and belief, the following types of Private Information were impacted as a result of the Data Breach: name, Social Security number, date of birth, and financial account number.[7]

13. On July 3, 2025, Defendant, issued a notice of public disclosure and began issuing notice letters to individuals impacted.[8]

[2] *Exhibit A*: Plaintiff T.H.'s Notice Letter.
[3] *Id.*
[4] *Id.*
[5] *Id.*
[6] *Id.*
[7] *Id.*
[8] *Id.*

14. Defendant Finastra's misconduct – failing to implement adequate and reasonable measures to protect Plaintiff and Class Members' Private Information, failing to timely detect the Data Breach, failing to take adequate steps to prevent and stop the Data Breach, failing to disclose the material facts that it did not have adequate security practices in place to safeguard the Private Information, and failing to provide timely and adequate notice of the Data Breach – caused substantial harm and injuries to Plaintiff and Class Members across the United States.

15. Due to Defendants' negligence and failures, cyber criminals obtained and now possess everything they need to commit personal identity theft and wreak havoc on the financial and personal lives of thousands of individuals, for decades to come

16. Plaintiff brings this class action lawsuit to hold Defendants responsible for their grossly negligent—indeed, reckless—failure to use statutorily required or reasonable industry cybersecurity measures to protect Class Members' Private Information.

17. As a result of the Data Breach, Plaintiff and Class members have already suffered damages. For example, now that their Private Information has been released into the criminal cyber domains, Plaintiff and Class members are at imminent and impending risk of identity theft. This risk will continue for the rest of their lives, as Plaintiff and Class members are now forced to deal with the danger of identity thieves possessing and using their Private Information.

18. Plaintiff and the Class Members have suffered identity theft and fraud as a result of the Data Breach which has caused them to lose time, money, and had an impact on their daily lives to try and mitigate the impact of the Data Breach. These efforts to mitigate are continuous and ongoing.

19. Plaintiff brings this action individually and on behalf of the Class and seeks actual damages and restitution. Plaintiff also seeks declaratory and injunctive relief, including significant improvements to Defendants' data security systems and protocols, future annual audits,

Defendant-funded long-term credit monitoring services, and other remedies as the Court sees necessary and proper.

## II. THE PARTIES

20. Plaintiff T.H. is a citizen and resident of Blue Springs, Jackson County, Missouri where she intends to maintain residence.

21. Defendant Finastra is a corporation organized under the laws of the State of New York, with its principal place of business located at 744 Primera Blvd, Suite 2000, Lake Mary, Florida, 32746. Defendant's registered agent is CT Corporation System, located at 1200 South Pine Island Road, Plantation, Florida, 33324.

22. Defendant BoA is a corporation organized under the laws of the state of Delaware, with its principal place of business located at 100 North Tryon Street, Charlotte, NC 28255. Defendant Bank of America Corporation's registered agent is CT Corporation System, located at 1200 South Pine Island Road, Plantation, Florida, 33324.

23. Defendant JP Morgan Chase Bank, N.A. is a corporation organized under the laws of the state of Ohio, with its principal place of business located at 111 Polaris Pkwy Columbus, OH 43240. Defendant Chase's registered agent is CT Corporation System, located at 1200 South Pine Island Road, Plantation, Florida, 33324.

## JURISDICTION AND VENUE

24. This Court has jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5 million, exclusive of interest and costs. The number of class members is more than 100 and at least one member of the Class defined below is a citizen of a different state that is diverse from Defendants' citizenship.[9]

---

[9] https://www.maine.gov/agviewer/content/ag/985235c7-cb95-4be2-8792-a1252b4f8318/50ef1213-a603-424f-888d-3ce7899eef06.html (last visited July 10, 2025).

Thus, minimal diversity exists under 28 U.S.C. § 1332 (d) (2) (A). Defendant Finastra Technology, Inc., has its principal place of business located in this District.

25. This Court has personal jurisdiction over Defendant Finastra because Defendant Finastra is registered to do business and maintains a principal place of business in this District.

26. This Court has personal jurisdiction over Defendant BoA because Defendant BoA is registered to do business and maintains a principal place of business in this District.

27. This Court has personal jurisdiction over Defendant Chase because Defendant Chase is registered to do business and maintains a principal place of business in this District.

28. Venue is proper in this Court because Defendants' principal place of business is located in this District, and because a substantial part of the events, acts, and omissions giving rise to Plaintiff's claims occurred in this District.

## III. FACTUAL ALLEGATIONS

### A. Background on Defendants

29. Defendant Finastra is a financial software company that provides solutions to banks, lenders, and other financial institutions. Defendant offers a broad range of software and services for retail banking, lending, payments, treasury and capital markets, and universal banking.

30. Defendant BoA is a financial institution that provides banking, lending and other financial services to business entities as well as individual citizens within the United States. Bank of America Corporation is a customer of Defendant Finastra Technology, Inc., and employed Defendant Finastra Technology, Inc. to provide software services to the company.

31. Defendant Chase is a financial institution that provides banking, lending and other financial services to business entities as well as individual citizens within the United States. JP Morgan Chase Bank, N.A. is a customer of Defendant Finastra Technology, Inc., and employed Defendant Finastra Technology, Inc. to provide software services to the company.

32. As a condition of doing business, Defendants require individuals entrust them with highly sensitive Private Information. In the ordinary course of receiving services from Defendants,

Plaintiff and Class Members were required to provide their Private Information to Defendants.

33. Upon information and belief, Defendants made promises and representations to individuals', including Plaintiff and Class Members, that the Private Information collected from them would be kept safe and confidential, and that the privacy of that information would be maintained.

34. Plaintiff and Class Members provided their Private Information to Defendants with the reasonable expectation and on the mutual understanding that Defendants would comply with its obligations to keep such information confidential and secure from unauthorized access.

35. As a result of collecting and storing the Private Information of Plaintiff and Class Members for their own financial benefit, Defendants had a continuous duty to adopt and employ reasonable measures to protect Plaintiff and the Class Members' Private Information from disclosure to third parties.

**B. The Data Breach**

36. On November 7, 2024, Defendant Finastra Technology, Inc., identified a cybersecurity incident that impacted certain internal systems.[10] Once the incident was discovered, Defendant launched an investigation, to determine the nature and scope of the Data Breach.[11]

37. Defendant Finastra's investigation revealed that an unauthorized third-party accessed a Secure File Transfer Platform ("SFTP") at various times between October 31, 2024 and November 8, 2024.[12] Defendant uses this SFTP to provide technical and customer support to its customers related to certain products.[13]

[10] *Exhibit A*: Plaintiff T.H.'s Notice Letter.
[11] *Id.*
[12] *Id.*
[13] *Id.*

38. Defendant Finastra's investigation indicates that on October 31, 2024, the

unauthorized third-party obtained certain files from the SFTP.[14] Upon information and belief, the following types of Private Information were impacted as a result of the Data Breach: name, Social Security number, date of birth, and financial account number.[15]

39. On July 3, 2025, nine months after the incident occurred, Defendant Finastra issued a notice of public disclosure and began issuing notice letters to individuals impacted.[16]

40. Defendants had obligations created by the FTC Act, contract, common law, and industry standards to keep Plaintiff and Class Members' Private Information confidential and to protect it from unauthorized access and disclosure.

Defendants did not use reasonable security procedures and practices appropriate to the nature of the sensitive information they were maintaining for Plaintiff and Class Members, causing the exposure of Private Information, such as encrypting the information or deleting it when it is no longer needed.

41. The Data Breach resulted in an unauthorized third-party accessing and acquiring files containing unencrypted Private Information of Plaintiff and Class Members. Plaintiff and Class Members' Private Information was accessed and stolen in the Data Breach.

42. Upon information and belief, Plaintiff and Class Members' Private Information was subsequently published on the dark web following the Data Breach, as that is the *modus operandi* of cybercriminals that commit cyber-attacks of this type.

43. Plaintiff received notice that her information was available on the dark web, and she began experiencing fraudulent activities on her financial accounts.

44. Defendants failed to take precautions designed to keep individuals' Private Information secure.

[14] *Exhibit A*: Plaintiff T.H.'s Notice Letter.
[15] *Id.*
[16] *Id.*

45. Individuals affected by the Data Breach are, and remain, at risk that their data will be sold or listed on the dark web and, ultimately, illegally used in the future.

**C. Defendants' Failure to Prevent, Identify, and Timely Report the Data Breach**

46. Defendant Finastra failed to take adequate measures to protect its computer systems against unauthorized access.

47. Defendant BoA failed to ensure that Defendant Finastra's computer systems were adequate and protected against unauthorized access.

48. Defendant Chase failed to ensure that Defendant Finastra's computer systems were adequate and protected against unauthorized access.

49. The Private Information that Defendants allowed to be exposed in the Data Breach is the type of private information that Defendants knew or should have known would be the target of cyberattacks.

50. Despite its own knowledge of the inherent risks of cyberattacks, and notwithstanding the FTC's data security principles and practices,[17] Defendants failed to disclose that its systems and security practices were inadequate to reasonably safeguard its past and present clients or customers Private Information.

51. The FTC directs businesses to use an intrusion detection system to expose a breach as soon as it occurs, monitor activity for attempted hacks, and have an immediate response plan if a breach occurs.[18] Immediate notification of a Data Breach is critical so that those impacted can take measures to protect themselves.

52. Here, Defendant Finastra, waited nearly nine months after being made aware of the Data Breach, to inform impacted individuals.

[17] *Protecting Personal Information: A Guide for Business,* FED. TRADE COMM'N (Oct. 2016), https://www.ftc.gov/business-guidance/resources/protecting-personal-information-guide-business. (last visited July 10, 2025).

[18] *Id*

**D. Plaintiff's Experience**

53. Plaintiff is a customer of Defendant BoA.

54. Plaintiff is a customer of Defendant Chase.

55. By association with Defendants BoA and Chase, Plaintiff is a customer of Defendant Finastra.

56. Plaintiff received a notice letter from Defendant Finastra, informing her that her Private Information was specifically identified as having been exposed to cybercriminals in the Data Breach.

57. Plaintiff is very careful with her Private Information.

58. Because of the Data Breach, Plaintiff's Private Information is now in the hands of cyber criminals and has suffered extensive identity theft and fraud which she must deal with on a daily and ongoing basis. Plaintiff and all Class Members are now imminently at risk of crippling future identity theft and fraud.

59. As a result of the Data Breach, Plaintiff has already expended time and suffered loss of productivity from taking time to address and attempt to ameliorate, mitigate, and address the consequences and future consequences of the Data Breach, including attempting to mitigate the ongoing impact of the Data Breach on her financial accounts and daily life, investigating the Data Breach, researching how best to ensure that she is protected from identity theft, reviewing account statements and other information, and taking other steps in an attempt to mitigate the harm caused by the Data Breach.

60. As a result of the Data Breach, Plaintiff has received a significant increase in suspicious spam calls, text messages, and emails.

61. Plaintiff has also suffered injury directly and proximately caused by the Data Breach, including: (a) theft of Plaintiff's valuable Private Information; (b) the imminent and certain impending injury flowing from fraud and identity theft posed by Plaintiff's Private

Information being placed in the hands of cybercriminals; (c) damages to and/or diminution in value of Plaintiff's Private Information that was entrusted to Defendants with the understanding that Defendants would safeguard this information against disclosure; (d) loss of the benefit of the bargain with Defendants to provide adequate and reasonable data security—*i.e.*, the difference in value between what Plaintiff should have received from Defendants and Defendants' defective and deficient performance of that obligation by failing to provide reasonable and adequate data security and failing to protect Plaintiff's Private Information; and (e) continued risk to Plaintiff's Private Information, which remains in the possession of Defendants and which is subject to further breaches so long as Defendants fail to undertake appropriate and adequate measures to protect the Private Information that was entrusted to Defendants.

### E. Defendants had an Obligation to Protect Private Information under the Law and the Applicable Standard of Care

62. Defendants also prohibited by the Federal Trade Commission Act (the "FTC Act") (15 U.S.C. § 45) from engaging in "unfair or deceptive acts or practices in or affecting commerce." The Federal Trade Commission (the "FTC") has concluded that a company's failure to maintain reasonable and appropriate data security for consumers' sensitive personal information is an "unfair practice" in violation of the FTC Act. *See, e.g., FTC v. Wyndham Worldwide Corp.*, 799 F.3d 236 (3d Cir. 2015).

63. Defendants are further required by various states' laws and regulations to protect Plaintiff and Class Members' Private Information.

64. Defendants owed a duty to Plaintiff and the Class to design, maintain, and test its computer and application systems to ensure that the Private Information in its possession was adequately secured and protected.

65. Defendants owed a duty to Plaintiff and the Class to create and implement reasonable data security practices and procedures to protect the Private Information in its possession, including adequately training its employees (and others who accessed Private Information within its computer systems) on how to adequately protect Private Information.

66. Defendants owed a duty to Plaintiff and the Class to implement processes that would detect a breach on its systems in a timely manner.

67. Defendants owed a duty to Plaintiff and the Class to act upon data security warnings and alerts in a timely fashion.

68. Defendants owed a duty to Plaintiff and the Class to disclose if its computer systems and data security practices were inadequate to safeguard individuals' Private Information from theft because such an inadequacy would be a material fact in the decision to entrust Private Information with Defendants.

69. Defendants owed a duty to Plaintiff and the Class to disclose in a timely and accurate manner when data breaches occurred.

70. Defendants owed a duty of care to Plaintiff and the Class because it was a foreseeable victim of a data breach.

**F. Defendants were on Notice of Cyber Attack Threats and of the Inadequacy of their Data Security**

71. Data security breaches have dominated the headlines for the last two decades. And it doesn't take an IT industry expert to know it. The general public can tell you the names of some of the biggest cybersecurity breaches: Target,[19] Yahoo,[20] Marriott International,[21]

[19] Michael Kassner, *Anatomy of the Target Data Breach: Missed Opportunities and Lessons Learned*, ZDNET (Feb. 2, 2015), https://www.zdnet.com/article/anatomy-of-the-target-data-breach-missed-opportunities-and-lessons-learned/

[20] Martyn Williams, *Inside the Russian Hack of Yahoo: How They Did It*, CSOONLINE.COM (Oct. 4, 2017), https://www.csoonline.com/article/3180762/inside-the-russian-hack-of-yahoo-how-they-did-it.html.

[21] Patrick Nohe, *The Marriot Data Breach: Full Autopsy*, THE SSL STORE: HASHEDOUT (Mar. 22, 2019), https://www.thesslstore.com/blog/autopsying-the-marriott-data-breach-this-is-why-insurance-matters/.

Chipotle, Chili's, Arby's,[22] and others.[23]

72. Defendants should certainly have been aware, and indeed was aware, that it was at risk for a data breach that could expose the Private Information that it collected and maintained.

73. Defendants were also on notice of the importance of data encryption of Private Information. Defendants knew it kept Private Information in its systems and yet it appears Defendants did not encrypt these systems or the information contained within them.

### G. Cyber Criminals Have and Will Continue to Use Plaintiff and Class Members' Private Information to Defraud Them

74. Plaintiff and Class Members' Private Information is of great value to hackers and cyber criminals, and the data stolen in the Data Breach has been used and will continue to be used in a variety of sordid ways for criminals to exploit Plaintiff and the Class Members and to profit off their misfortune. Each year, identity theft causes tens of billions of dollars of losses to victims in the United States.[24] For example, with the Private Information stolen in the Data Breach, identity thieves can open financial accounts, apply for credit, collect government benefits, commit crimes, create false driver's licenses and other forms of identification and sell them to other criminals or undocumented immigrants, steal benefits, give breach victims' names to police during arrests, and many other harmful forms of identity theft.[25] These criminal activities have and will result in devastating financial and personal losses to Plaintiff and Class Members.

[22] Alfred Ng, *FBI Nabs Alleged Hackers in Theft of 15M Credit Cards from Chipotle, Others*, CNET (Aug. 1, 2018), https://www.cnet.com/news/fbi-nabs-alleged-hackers-in-theft-of-15m-credit-cards-from-chipotle-others/?ftag=CMG-01-10aaa1b.

[23] *See, e.g.*, Taylor Armerding, *The 18 Biggest Data Breaches of the 21st Century*, CSO ONLINE (Dec. 20, 2018), https://www.csoonline.com/article/2130877/the-biggest-data-breaches-of-the-21st-century.html.

[24] "Facts + Statistics: Identity Theft and Cybercrime," Insurance Info. Inst., https://www.iii.org/fact-statistic/facts-statistics-identity-theft-and-cybercrime (discussing Javelin Strategy & Research's report "2018 Identity Fraud: Fraud Enters a New Era of Complexity").

[25] https://www.experian.com/blogs/ask-experian/what-should-i-do-if-my-drivers-license-number-is-stolen/.

75. Private Information is such a valuable commodity to identity thieves that once it has been compromised, criminals will use it and trade the information on the cyber black-market for years.[26]

76. Based on the foregoing, the information compromised in the Data Breach is significantly more valuable than the loss of, for example, credit card information in a retailer data breach because there, victims can cancel or close credit and debit card accounts. The information compromised in this Data Breach is impossible to "close" and difficult, if not impossible, to change—Social Security number and name.

77. This data demands a much higher price on the black market. Martin Walter, senior director at cybersecurity firm RedSeal, explained, "Compared to credit card information, personally identifiable information and Social Security numbers are worth more than 10x on the black market."[27]

78. This was a financially motivated Data Breach, as apparent from the discovery of the cyber criminals seeking to profit off the sale of Plaintiff and the Class Members' Private Information on the dark web. The Private Information exposed in this Data Breach are valuable to identity thieves for use in the kinds of criminal activity described herein. These risks are both certainly impending and substantial. As the FTC has reported, if hackers get access to personally identifiable information, they will use it.[2]

---

[26] *Data Breaches Are Frequent, but Evidence of Resulting Identity Theft Is Limited; However, the Full Extent Is Unknown*, GAO, July 5, 2007, https://www.gao.gov/products/gao-07-737.

[27] Tim Greene, *Anthem Hack: Personal Data Stolen Sells for 10x Price of Stolen Credit Card Numbers*, IT World, (Feb. 6, 2015), *available at* https://www.networkworld.com/article/2880366/anthem-hack-personal-data-stolen-sells-for-10x- price-of-stolen-credit-card-numbers.html.

[28] Ari Lazarus, *How fast will identity thieves use stolen info?*, FED. TRADE COMM'N (May 24, 2017), https://www.consumer.ftc.gov/blog/2017/05/how-fast-will-identity-thieves-use-stolen-info.

82. Hackers may not use the accessed information right away. According to the U.S. Government Accountability Office, which conducted a study regarding data breaches:

> [I]n some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.[29]

83. As described above, identity theft victims must spend countless hours and large amounts of money repairing the impact to their credit.[30]

84. With this Data Breach, identity thieves have already started to prey on the victims, and one can reasonably anticipate this will continue.

85. Victims of the Data Breach, like Plaintiff and other Class Members, must spend many hours and large amounts of money protecting themselves from the current and future negative impacts to their credit because of the Data Breach.[31]

86. In fact, as a direct and proximate result of the Data Breach, Plaintiff and the Class have suffered, and have been placed at an imminent, immediate, and continuing increased risk of suffering, harm from fraud and identity theft. Plaintiff and the Class must now take the time and effort and spend the money to mitigate the actual and potential impact of the Data Breach on their everyday lives, including purchasing identity theft and credit monitoring services, placing "freezes" and "alerts" with credit reporting agencies, contacting their financial institutions, healthcare providers, closing or modifying financial accounts, and closely reviewing and monitoring bank accounts, credit reports, and health insurance account information for unauthorized activity for years to come.

---

[29] *Data Breaches Are Frequent, but Evidence of Resulting Identity Theft Is Limited; However, the Full Extent Is Unknown*, GAO, July 5, 2007, https://www.gao.gov/products/gao-07-737.

[30] "Guide for Assisting Identity Theft Victims," Federal Trade Commission, 4 (Sept. 2013), http://www.consumer.ftc.gov/articles/pdf-0119-guide-assisting-id-theft-victims.pdf.

[31] "Guide for Assisting Identity Theft Victims," Federal Trade Commission, 4 (Sept. 2013), http://www.consumer.ftc.gov/articles/pdf-0119-guide-assisting-id-theft-victims.pdf

87. Plaintiff and the Class have suffered, and continue to suffer, actual harms for which they are entitled to compensation, including:

a. Trespass, damage to, and theft of their personal property including Private Information.

b. Improper disclosure of their Private Information.

c. The imminent and certainly impending injury flowing from potential fraud and identity theft posed by their Private Information being placed in the hands of criminals and having been already misused.

d. The imminent and certainly impending risk of having their Private Information used against them by spam callers to defraud them.

e. Damage flowing from Defendants' untimely and inadequate notification of the data breach.

f. Loss of privacy suffered as a result of the Data Breach.

g. Ascertainable losses in the form of out-of-pocket expenses and the value of their time reasonably expended to remedy or mitigate the effects of the data breach.

h. Ascertainable losses in the form of deprivation of the value of individuals' personal information for which there is a well-established and quantifiable national and international market.

i. The loss of use of and access to their credit, accounts, and/or funds.

j. Damage to their credit due to fraudulent use of their Private Information; and

k. Increased cost of borrowing, insurance, deposits and other items which are adversely affected by a reduced credit score.

88. Moreover, Plaintiff and Class Members have an interest in ensuring that their information, which remains in the possession of Defendants, is protected from further breaches by the implementation of industry standard and statutorily compliant security measures and safeguards. Defendant has shown itself to be incapable of protecting Plaintiff and Class Members' Private Information.

89. Plaintiff and Class Members are desperately trying to mitigate the damage that Defendants have caused them but, given the Private Information Defendants made accessible to hackers, they are certain to incur additional damages. Because identity thieves have their Private Information, Plaintiff and all Class Members will need to have identity theft monitoring protection for the rest of their lives.

90. None of this should have happened. The Data Breach was preventable.

**H. Defendants Could Have Prevented the Data Breach but Failed to Adequately Protect Plaintiff and Class Members' Private Information**

91. Data breaches are preventable.[32] As Lucy Thompson wrote in the DATA BREACH AND ENCRYPTION HANDBOOK, "[i]n almost all cases, the data breaches that occurred could have been prevented by proper planning and the correct design and implementation of appropriate security solutions."[33] she added that "[o]rganizations that collect, use, store, and share sensitive personal data must accept responsibility for protecting the information and ensuring that it is not compromised ."[34]

[32] Lucy L. Thompson, "Despite the Alarming Trends, Data Breaches Are Preventable," *in* DATA BREACH AND ENCRYPTION HANDBOOK (Lucy Thompson, ed., 2012).
[33] *Id.* at 17.
[34] *Id.* at 28.

92. "Most of the reported data breaches are a result of lax security and the failure to create or enforce appropriate security policies, rules, and procedures … Appropriate information security controls, including encryption, must be implemented and enforced in a rigorous and disciplined manner so that a *data breach never occurs*."[35]

93. The FTC has promulgated numerous guides for businesses which highlight the importance of implementing reasonable data security practices. According to the FTC, the need for data security should be factored into all business decision-making.

94. In 2016, the FTC updated its publication, *Protecting Personal Information: A Guide for Business*, which established cyber-security guidelines for businesses. The guidelines note that businesses should protect the personal customer information that they keep; properly dispose of personal information that is no longer needed; encrypt information stored on computer networks; understand their network's vulnerabilities; and implement policies to correct any security problems.7 The guidelines also recommend that businesses use an intrusion detection system to expose a breach as soon as it occurs; monitor all incoming traffic for activity indicating someone is attempting to hack the system; watch for large amounts of data being transmitted from the system; and have a response plan ready in the event of a breach.[36]

95. The FTC further recommends that companies not maintain Private Information longer than is needed for authorization of a transaction; limit access to sensitive data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.

---

[35] Lucy L. Thompson, "Despite the Alarming Trends, Data Breaches Are Preventable," *in* DATA BREACH AND ENCRYPTION HANDBOOK (Lucy Thompson, ed., 2012).

[36] *Protecting Personal Information: A Guide for Business*, Federal Trade Commission (2016). Available at https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting-personal-information.pdf

96. The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect customer data, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

97. Defendants failed to properly implement basic data security practices, including those set forth by the FTC.

98. Defendants' failure to employ reasonable and appropriate measures to protect against unauthorized access to individuals' Private Information constitutes an unfair act or practice prohibited by Section 5 of the FTC Act, 15 U.S.C. § 45.

99. Defendants failed to meet the minimum standards of any of the following frameworks: NIST Cybersecurity Framework Version 2.0 (including PR.AA-01, PR.AA.-02, PR.AA-03, PR.AA-04, PR.AA-05, PR.AT-01, PR.DS-01, PR-DS-02, PR.DS-10, PR.PS-01, PR.PS-02, PR.PS-05, PR.IR-01, DE.CM-01, DE.CM-03, DE.CM-06, DE.CM-09, and RS.CO-04) and the Center for Internet Security's Critical Security Controls (CIS CSC), which are all established standards in reasonable cybersecurity readiness.

100. Defendants were entrusted with properly holding, safeguarding, and protecting against unlawful disclosure of Plaintiff and Class Members' Private Information.

101. Many failures laid the groundwork for the success ("success" from a cybercriminal's viewpoint) of the Data Breach, starting with Defendant's failure to incur the costs necessary to implement adequate and reasonable cyber security procedures and protocols necessary to protect Plaintiff and Class Members' Private Information.

102. Defendants were at all times, fully aware of its obligation to protect the Private

Information of Plaintiff and Class Members. Defendants were also aware of the significant repercussions that would result from its failure to do so.

103. Defendants maintained the Private Information in a reckless manner. In particular, the Private Information was maintained and/or exchanged, unencrypted, in Defendants' systems and were maintained in a condition vulnerable to cyberattacks.

104. Defendants knew, or reasonably should have known, the importance of safeguarding Private Information and of the foreseeable consequences that would occur if Plaintiff and Class Members' Private Information was stolen, including the significant costs that would be placed on Plaintiff and Class embers as a result of a breach.

105. The mechanism of the cyberattack and potential for improper disclosure of Plaintiff and Class Members' Private Information was a known risk to Defendants, and thus Defendants were on notice that failing to take necessary steps to secure Plaintiff and Class Members' Private Information from those risks left that information in a dangerous condition.

106. Defendants disregarded the rights of Plaintiff and Class Members by, *inter alia*, (i) intentionally, willfully, recklessly, or negligently failing to take adequate and reasonable measures to ensure that its business email accounts were protected against unauthorized intrusions; (ii) failing to disclose that it did not have adequately robust security protocols and training practices in place to adequately safeguard Plaintiff and Class Members' Private Information; (iii) failing to take standard and reasonably available steps to prevent the Data Breach; (iv) concealing the existence and extent of the Data Breach for an unreasonable duration of time; and (v) failing to provide Plaintiff and Class Members prompt and accurate notice of the Data Breach.

## IV. CLASS ACTION ALLEGATIONS

107. Plaintiff incorporates by reference all allegations of the preceding paragraphs as though fully set forth herein.

108. Plaintiff brings all claims as class claims under Federal Rule of Civil Procedure 23. Plaintiff asserts all claims on behalf of the Class, defined as follows:

> All individuals in the United States whose Private Information was actually or potentially accessed or acquired during Defendants' Data Breach, including those to which Defendant sent Notice of the Data Breach ("Nationwide Class" or "Class").

109. Plaintiff reserves the right to amend the above definition or to propose subclasses in subsequent pleadings and motions for class certification.

110. The proposed Class meets the requirements of Fed. R. Civ. P. 23(a), (b)(1), (b)(2), (b)(3), and (c)(4).

111. **Numerosity:** The proposed Class is believed to be so numerous that joinder of all members is impracticable. Upon information and belief, the Class is comprised of thousands of members.

112. **Typicality:** Plaintiff's claims are typical of the claims of the Class. Plaintiff and all members of the Class were injured through Defendants' uniform misconduct. The same event and conduct that gave rise to Plaintiff's claims are identical to those that give rise to the claims of every other Class member because Plaintiff and each member of the Class had their sensitive Private Information compromised in the same way by the same conduct of Defendants.

113. **Adequacy:** Plaintiff is an adequate representative of the Class because Plaintiff's interests do not conflict with the interests of the Class that Plaintiff seeks to represent; Plaintiff has retained counsel competent and highly experienced in data breach class action litigation; and Plaintiff and Plaintiff's counsel intends to prosecute this action vigorously. The interests of the Class will be fairly and adequately protected by Plaintiff and Plaintiff's counsel.

114. **Superiority:** A class action is superior to other available means of fair and efficient adjudication of the claims of Plaintiff and the Class. The injury suffered by each individual Class member is relatively small in comparison to the burden and expense of individual prosecution of complex and expensive litigation. It would be very difficult, if not impossible, for members of the Class individually to effectively redress Defendants' wrongdoing. Even if Class members could afford such individual litigation, the court system could not. Individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation increases the delay and expense to all parties, and to the court system, presented by the complex legal and factual issues of the case. By contrast, the class action device presents far fewer management difficulties and provides benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

115. **Commonality and Predominance:** There are many questions of law and fact common to the claims of Plaintiff and the other members of the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include:

a. Whether Defendants engaged in the wrongful conduct alleged herein.

b. Whether Defendants failed to adequately safeguard Plaintiff and the Class's Private Information.

c. Whether Defendants' email and computer systems and data security practices used to protect Plaintiff and Class Members' Private Information violated the FTC Act, and/or state laws and/or Defendant's other duties discussed herein.

d. Whether Defendants owed a duty to Plaintiff and the Class to adequately protect their Private Information, and whether it breached this duty.

e. Whether Defendants knew or should have known that its computer and network security systems and business email accounts were vulnerable to a data breach.

f. Whether Defendants' conduct, including its failure to act, resulted in or was the proximate cause of the Data Breach.

g. Whether Defendants breached contractual duties owed to Plaintiff and the Class to use reasonable care in protecting their Private Information; Whether Defendants failed to adequately respond to the Data Breach, including failing to investigate it diligently and notify affected individuals in the most expedient time possible and without unreasonable delay, and whether this caused damages to Plaintiff and the Class.

h. Whether Defendants continue to breach duties to Plaintiff and the Class.

i. Whether Plaintiff and the Class suffered injury as a proximate result of Defendants' negligent actions or failures to act.

j. Whether Plaintiff and the Class are entitled to recover damages, equitable relief, and other relief.

k. Whether injunctive relief is appropriate and, if so, what injunctive relief is necessary to redress the imminent and currently ongoing harm faced by Plaintiff and members of the Class and the general public.

l. Whether Defendants' actions alleged herein constitute gross negligence; and

m. Whether Plaintiff and Class members are entitled to punitive damages.

## V. CAUSES OF ACTION

### COUNT ONE

### NEGLIGENCE/NEGLIGENCE *PER SE*
### (On Behalf of Plaintiff and the Nationwide Class)

116. Plaintiff incorporates by reference all allegations contained in paragraphs 1-15, and 21-91, as though fully set forth herein.

117. Defendants solicited, gathered, and stored the Private Information of Plaintiff and the Class as part of the operation of its business and in order to gain profit. Upon accepting and storing the Private Information of Plaintiff and Class Members, Defendants undertook and owed a duty to Plaintiff and Class members to exercise reasonable care to secure and safeguard that information and to use secure methods to do so.

118. Defendants had full knowledge of the sensitivity of the Private Information, the types of harm that Plaintiff and Class Members could and would suffer if the Private Information was wrongfully disclosed, and the importance of adequate security.

119. Plaintiff and Class Members were the foreseeable victims of any inadequate safety and security practices on the part of Defendants. Plaintiff and the Class Members had no ability to protect their Private Information that was in Defendants' possession. As such, a special relationship existed between Defendants and Plaintiff and the Class.

120. Defendants were well aware of the fact that cyber criminals routinely target companies through cyberattacks in an attempt to steal sensitive personal information.

121. Defendants owed Plaintiff and the Class Members a common law duty to use reasonable care to avoid causing foreseeable risk of harm to Plaintiff and the Class when obtaining, storing, using, and managing personal information, including taking action to reasonably safeguard such data and providing notification to Plaintiff and the Class Members of any breach in a timely

manner so that appropriate action could be taken to minimize losses.

122. Defendants' duty extended to protecting Plaintiff and the Class from the risk of foreseeable criminal conduct of third parties, which has been recognized in situations where the actor's own conduct or misconduct exposes another to the risk or defeats protections put in place to guard against the risk, or where the parties are in a special relationship. *See* Restatement (Second) of Torts § 302B. Numerous courts and legislatures also have recognized the existence of a specific duty to reasonably safeguard personal information.

123. Defendants had duties to protect and safeguard the Private Information of Plaintiff and the Class from being vulnerable to cyberattacks by taking common-sense precautions when dealing with sensitive Private Information. Additional duties that Defendants owed Plaintiff, and the Class include:

a. To exercise reasonable care in designing, implementing, maintaining, monitoring, and testing Defendants' networks, systems, email accounts, protocols, policies, procedures and practices to ensure that Plaintiff and Class Members' Private Information was adequately secured from impermissible release, disclosure, and publication.

b. To protect Plaintiff and Class Members' Private Information in its possession by using reasonable and adequate security procedures and systems.

c. To implement processes to quickly detect a data breach, security incident, or intrusion involving its business email system, networks and servers; and

d. To promptly notify Plaintiff and Class Members of any data breach, security incident, or intrusion that affected or may have affected their Private Information.

124. Only Defendants were in a position to ensure that its systems and protocols were sufficient to protect the Private Information that Plaintiff and the Class had entrusted to it.

125. Defendants breached its duty of care by failing to adequately protect Plaintiff and Class Members' Private Information. Defendants breached their duties by, among other things:

a. Failing to exercise reasonable care in obtaining, retaining securing, safeguarding, deleting, and protecting the Private Information in its possession.

b. Failing to protect the Private Information in its possession by using reasonable and adequate security procedures and systems.

c. Failing to adequately and properly audit, test, and train its employees to avoid phishing emails.

d. Failing to use adequate email security systems, including industry standard SPAM filters, DMARC enforcement, and/or Sender Policy Framework enforcement to protect against phishing emails.

e. Failing to adequately and properly audit, test, and train its employees regarding how to properly and securely transmit and store Private Information.

f. Failing to adequately train its employees to not store Private Information longer than absolutely necessary for the specific purpose that it was sent or received.

g. Failing to consistently enforce security policies aimed at protecting Plaintiff and the Class's Private Information.

h. Failing to implement processes to quickly detect data breaches, security incidents, or intrusions.

i. Failing to promptly notify Plaintiff and Class Members of the Data Breach that affected their Private Information.

126. Defendants' willful failure to abide by these duties was wrongful, reckless, and grossly negligent in light of the foreseeable risks and known threats.

127. As a proximate and foreseeable result of Defendants' grossly negligent conduct, Plaintiff and the Class have suffered damages and are at imminent risk of additional harms and damages (as alleged above).

128. Through Defendants' acts and omissions described herein, including but not limited to Defendant's failure to protect the Private Information of Plaintiff and Class Members from being stolen and misused, Defendants unlawfully breached their duty to use reasonable care to adequately protect and secure the Private Information of Plaintiff and Class Members while it was within Defendants' possession and control.

129. Further, through its failure to provide timely and clear notification of the Data Breach to Plaintiff and Class Members, Defendants prevented Plaintiff and Class Members from taking meaningful, proactive steps toward securing their Private Information and mitigating damages.

130. As a result of the Data Breach, Plaintiff and Class Members have spent time, effort, and money to mitigate the actual and potential impact of the Data Breach on their lives, including but not limited to, responding to fraudulent activity, closely monitoring bank account activity, and examining credit reports and statements sent from providers and their insurance companies.

131. Defendants' wrongful actions, inactions, and omissions constituted (and continue to constitute) common law negligence.

132. The damages Plaintiff and the Class have suffered (as alleged above) and will suffer were and are the direct and proximate result of Defendants' grossly negligent conduct.

133. In addition to its duties under common law, Defendants had additional duties imposed by statute and regulations, including the duties under the FTC Act. The harms which occurred as a result of Defendants' failure to observe these duties, including the loss of privacy, lost time and expense, and significant risk of identity theft are the types of harm that these statutes and regulations intended to prevent.

134. Defendants violated these statutes when it engaged in the actions and omissions alleged herein, and Plaintiff and Class Members' injuries were a direct and proximate result of Defendant's violations of these statutes. Plaintiff therefore is entitled to the evidentiary presumptions for negligence *per se*.

135. Pursuant to the FTC Act, 15 U.S.C. § 45(a), Defendants owed a duty to Plaintiff and the Class to provide fair and adequate computer systems and data security to safeguard the Private Information of Plaintiff and the Class.

136. The FTC Act prohibits "unfair practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Defendants, of failing to use reasonable measures to protect Private Information. The FTC publications and orders described above also formed part of the basis of Defendants' duty in this regard.

137. Defendants gathered and stored the Private Information of Plaintiff and the Class as part of its business, which affect commerce.

138. Defendants violated the FTC Act by failing to use reasonable measures to protect the Private Information of Plaintiff and the Class and by not complying with applicable industry standards, as described herein.

139. Defendants breached their duties to Plaintiff and the Class under the FTC Act by failing to provide fair, reasonable, or adequate computer systems and/or data security practices to safeguard Plaintiff and Class Members' Private Information, and by failing to provide prompt and

specific notice without reasonable delay.

140. Plaintiff and the Class are within the class of persons that the FTC Act was intended to protect.

141. The harm that occurred as a result of the Data Breach is the type of harm the FTC Act was intended to guard against.

142. Defendants breached their duties to Plaintiff and the Class under these laws by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard Plaintiff and the Class's Private Information.

143. Defendants breached their duties to Plaintiff and the Class by unreasonably delaying and failing to provide notice of the Data Breach expeditiously and/or as soon as practicable to Plaintiff and the Class.

144. As a direct and proximate result of Defendants' negligence, Plaintiff and the Class have suffered, and continue to suffer, damages arising from the Data Breach, as alleged above.

145. The injury and harm that Plaintiff and Class Members suffered (as alleged above) was the direct and proximate result of Defendants' negligence.

146. Plaintiff and the Class have suffered injury and are entitled to actual and punitive damages in amounts to be proven at trial.

**<u>COUNT TWO</u>**
**BREACH OF IMPLIED CONTRACT**
**(On Behalf of Plaintiff and the Nationwide Class)**

147. Plaintiff incorporates by reference all allegations contained in paragraphs 1-15, and 21-91, as though fully set forth herein.

148. Plaintiff and Class Members were required to provide Defendants with their Private Information in order to receive services.

149. When Plaintiff and Class Members provided their Private Information to

Defendant, they entered into implied contracts in which Defendants agreed to comply with its statutory and common law duties to protect their Private Information and to timely notify them in the event of a Data Breach.

150. Based on Defendants' representations, legal obligations, and acceptance of Plaintiff and the Class Members' Private Information, Defendants had an implied duty to safeguard their Private Information through the use of reasonable industry standards. This implied duty was reinforced by Defendants' representations in its Privacy Policy.

151. Defendants breached the implied contracts by failing to safeguard Plaintiff and Class Members' Private Information and failing to provide them with timely and accurate notice of the Data Breach. Indeed, it took Defendant Finastra Technology, Inc., nearly two months to warn Plaintiff and Class Members of their imminent risk of identity theft, leaving Plaintiff and Class Members unsure as to the extent of the information that was compromised.

152. As a direct and proximate result of Defendants' breach of implied contract, Plaintiff and the Class Members have suffered damages, including foreseeable consequential damages that Defendants knew about when it requested Plaintiff and the Class Members' Private Information

153. Plaintiff and Class Members were required to provide Defendants with their Private Information in order to receive services.

154. When Plaintiff and Class Members provided their Private Information to Defendants as a condition of obtaining services, they entered into implied contracts in which Defendants agreed to comply with its statutory and common law duties to protect their Private Information and to timely notify them in the event of a Data Breach.

155. Based on Defendants' representations, legal obligations, and acceptance of Plaintiff and the Class Members' Private Information, Defendants had an implied duty to safeguard their Private Information through the use of reasonable industry standards.

156. Defendants breached the implied contracts by failing to safeguard Plaintiff and Class Members' Private Information and failing to provide them with timely and accurate notice of the Data Breach. Indeed, it took Defendant Finastra Technology, Inc., weeks to warn Plaintiff and Class Member of their imminent risk of identity theft. The vagueness of the breach notifications also left Plaintiff and Class Members unsure as to the extent of the information that was compromised.

157. As a direct and proximate result of Defendants' breach of implied contract, Plaintiff and the Class Members have suffered damages, including foreseeable consequential damages that Defendants knew about when it requested Plaintiff and the Class Members' Private Information.

**COUNT THREE**
**UNJUST ENRICHEMNT**
**(On Behalf of Plaintiff and the Nationwide Class)**

158. Plaintiff incorporates by reference all allegations contained in paragraphs 1-15, and 21-91, as though fully set forth herein.

159. Plaintiff and the Class bring this claim in the alternative to all other claims and remedies at law.

160. Defendants collected, maintained, and stored the Private Information of Plaintiff and Class Members as part its business operations and to gain profits. As such, Defendants had direct knowledge of the monetary benefits conferred upon it.

161. Defendants, by way of its affirmative actions and omissions, including its knowing violations of its express or implied contracts with the entities that collected Plaintiff and the Class Members' Private Information, knowingly and deliberately enriched itself by saving the costs it reasonably and contractually should have expended on reasonable data privacy and security measures to secure Plaintiff and Class Members' Private Information.

162. Instead of providing a reasonable level of security, training, and protocols that

would have prevented the Data Breach, as described above and as is common industry practice among companies entrusted with similar Private Information, Defendants, upon information and belief, instead consciously and opportunistically calculated to increase its own profits at the expense of Plaintiff and Class Members.

163. Defendants failed to implement—or adequately implement—data security practices, procedures, and programs to secure sensitive Private Information, including without limitation those industry standard data security practices, procedures, and programs discussed herein.

164. As a direct and proximate result of Defendants' decision to profit rather than provide adequate data security, Plaintiff and Class Members suffered and continue to suffer actual damages, including (i) the amount of the savings and costs Defendant reasonably and contractually should have expended on data security measures to secure Plaintiff and Class Members Private Information, (ii) time and expenses mitigating harms, (iii) diminished value of Private Information, (iv) loss of privacy, (v) harms as a result of identity theft; and (vi) an increased risk of future identity theft.

165. Defendants, upon information and belief, has therefore engaged in opportunistic and unethical conduct by profiting from conduct that it knew would create a significant and highly likely risk of substantial and certainly impending harm to Plaintiff and the Class in direct violation of Plaintiff and Class Members' interests. As such, it would be inequitable, unconscionable, and unlawful to permit Defendants to retain the benefits it derived as a consequence of its wrongful conduct.

166. Accordingly, Plaintiff and the Class are entitled to relief in the form of restitution and disgorgement of all ill-gotten gains, which should be put into a common fund to be distributed to Plaintiff and the Class.

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff and the Class pray for judgment against Defendants as follows:

a. An order certifying this action as a class action under Fed. R. Civ. P. 23, defining the Class as requested herein, appointing the undersigned as Class counsel, and finding that Plaintiff is a proper representative of the Class requested herein.

b. A judgment in favor of Plaintiff and the Class awarding them appropriate monetary relief, including actual damages, restitution, attorney fees, expenses, costs, and such other and further relief as is just and proper.

c. An order providing injunctive and other equitable relief as necessary to protect the interests of the Class and the general public as requested herein, including, but not limited to:

i. Ordering that Defendants engage third-party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on Defendants' systems on a periodic basis, and ordering Defendants to promptly correct any problems or issues detected by such third-party security auditors.

ii. Ordering that Defendants engage third-party security auditors and internal personnel to run automated security monitoring.

iii. Ordering that Defendants audit, test, and train its security personnel regarding any new or modified procedures.

iv. Ordering that Defendants segment customer data by, among other things, creating firewalls and access controls so that if one area of Defendants' systems is compromised, hackers cannot gain access to other portions of Defendants' systems.

v. Ordering that Defendants cease transmitting Private Information via unencrypted email.

vi. Ordering that Defendants cease storing Private Information in email accounts.

vii. Ordering that Defendants purge, delete, and destroy in a reasonably secure manner customer data not necessary for its provisions of services.

viii. Ordering that Defendants conduct regular database scanning and securing checks.

ix. Ordering that Defendants routinely and continually conduct internal training and education to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach; and

x. Ordering Defendants to meaningfully educate its current, former, and prospective employees and subcontractors about the threats faced as a result of the loss of financial and personal information to third parties, as well as the steps they must take to protect against such occurrences.

d. An order requiring Defendants to pay the costs involved in notifying the Class Members about the judgment and administering the claims process.

e. A judgment in favor of Plaintiff and the Class awarding them pre-judgment and post-judgment interest, reasonable attorneys' fees, costs and expenses as allowable by law; and

f. An award of such other and further relief as this Court may deem just and proper.

## VII. DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues so triable.

DATED: July 28, 2025

/s/ *Mariya Weekes*
Mariya Weekes (FBN 56299)
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
333 SE 2nd Avenue, Suite 2000
Miami, FL 33131
Tel: (866) 252-0878
mweekes@milberg.com

Maureen M. Brady *(Pro Hac Vice forthcoming)*
McSHANE & BRADY, LLC
4006 Central Street
Kansas City, MO 64111
P: 816-888-8010
mbrady@mcshanebradylaw.com
*Counsel for Plaintiff and the Proposed Class*